IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

JASON A. HILL (DC 477543)
JOHN P. TUSTIN (TX 24056458)
Trial Attorneys
Natural Resources Section
J. BRETT GROSKO (Maryland Bar)
Trial Attorney
Wildlife and Marine Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
Benjamin Franklin Station, P.O. Box 663
Washington, D.C.  20044-0663
Tel:    202-514-1024 (Hill)
        202-305-3022 (Tustin)
        202-305-0342 (Grosko)
Fax:    202-305-0506 (Hill and Tustin)
        202-305-0275 (Grosko)
Jason.Hill2@usdoj.gov
John.Tustin@usdoj.gov
Brett.Grosko@usdoj.gov

*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR SIERRA NEVADA CONSERVATION, et al., | ) ) ) |
| Plaintiffs, | ) Case No. 2:09-CV-02523-LKK-JFM ) |
| v. | ) ) |
| UNITED STATES FOREST SERVICE, et al., | ) ) ) |
| Defendants. | ) |

**RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF ADDITIONAL UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Pursuant to Local Civil Rule 260, Defendants Ramiro Villalvazo, in his official capacity as Forest Supervisor for the Eldorado National Forest, and the United States Forest Service

1  (collectively, "Defendants"), hereby respond to Plaintiffs' Statement of Facts in Support of
2  Motion for Summary Judgment (Dock. No. 52-2) and further provide a summary of additional
3  undisputed facts, as contained in the administrative record filed in this action, in support of their
4  cross-motion for summary judgment, and in opposition to Plaintiffs' motion for summary
5  judgment. Local Civil Rule 260 requires the submission of a statement of undisputed facts. As
6  Plaintiffs state, and for the reasons explained below, however, there are no material facts in the
7  case. The Court's review of claims brought under Administrative Procedure Act, 5 U.S.C. §
8  706, is to be based upon an administrative record compiled by the agency. See, e.g., Florida
9  Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985); Camp v. Pitts, 411 U.S. 138 (1973);
10 Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971). "The task of the reviewing
11 court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision
12 based on the record the agency presents to the reviewing court." Florida Power & Light Co., 470
13 U.S. at 743-44. The Ninth Circuit repeatedly has articulated and enforced the rule that the scope
14 of judicial review of agency action is limited to the administrative record. See, e.g., Lands
15 Council v. Powell, 395 F.3d 1019 (9th Cir. 2005); see, e.g., Northcoast Environmental Center v.
16 Glickman, 136 F.3d 660, 665 (9th Cir. 1998) ("[J]udicial review of an agency decision not to
17 issue an EIS is generally limited to review of the administrative record at the time the decision
18 was made." (citing Friends of the Earth v. Hintz, 800 F.2d 822, 829 (9th Cir. 1986))).
19 Accordingly, judicial review of agency action is a unique procedure, different in both nature and
20 scope from the procedures used to resolve civil actions within the original jurisdiction of the
21 federal district courts.

22      Consequently, there are no material facts for the Court to resolve in the first instance.
23 Rather, the Court's role is limited to determining whether the challenged action or inaction of the
24 Defendants is supported by the record. In turn, a statement of undisputed facts is inapposite
25 here. Nonetheless, to assure technical compliance with the local rules, Defendants state as
26 follows:
27
28

Case No. 2:09-CV-02523-LKK-JFM
Center for Sierra Nevada Conservation, et al. v. USFS                                    Page 2

## II. DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1. Defendants do not dispute the allegations contained in the first, second and fourth sentences of the first paragraph. Defendants admit the allegations contained in the third sentence but additionally aver that the Eldorado National Forest ("Forest" or "ENF") contains 786,994 gross acres of forest lands of diverse topography, soil type, vegetation, and habitat type. TMAR03651.

2. The Federal Defendants deny the allegations in the first sentences of Paragraph 2, and aver that the ENF provides habitat for: (1) three plant and animal species listed pursuant to the Endangered Species Act ("ESA"); (2) forty-five U.S. Forest Service ("USFS")-designated sensitive plant and animal species; and (3) ten Management Indicator Species, as described in the Terrestrial Wildlife, Aquatic Wildlife, and Plant Biological Evaluations and in Terrestrial and Aquatic Wildlife Management Indicator Species Reports. TMAR12748, 12906, 12954, 13026, 13109. The allegations in the third sentence in Paragraph 2 are vague and ambiguous, and the Defendants are thus without information or knowledge sufficient to form a belief as to the truth of the allegations in the third sentence in Paragraph 2, and therefore deny the same.

3. As to the allegations contained in the first sentence, Defendants admit that the California red-legged frog ("CRLF") was listed as threatened under the ESA in 1996, but deny that the ENF contains "essential recovery habitat" for the species. Travel Management Administrative Record ("TMAR") 15835. Defendants further aver that neither the ESA nor the CRLF recovery plan uses the term "essential recovery habitat" or "recovery habitat". TMAR15835. Defendants deny the allegations contained in the second sentence, and further aver that the CRLF is the largest native frog in the western United States. TMAR15844. Defendants do not dispute the allegations contained in the third and fourth sentences. Defendants dispute the allegations contained in the fifth sentence and state that the CRLF recovery plan provides in full:

Case No. 2:09-CV-02523-LKK-JFM
Center for Sierra Nevada Conservation, et al. v. USFS                    Page 3

> Although its range once covered nearly the length of California from the coast to the Sierra Nevada mountains, the species has been extirpated from 70 percent of its former range and now is found primarily in coastal drainages of central California, and isolated drainages in the Sierra Nevada, northern Coast, and northern Transverse Ranges.  Populations remain in approximately 256 streams or drainages in 28 Counties.

TMAR15846-47.

4. Defendants deny the allegations contained in the first sentence, and aver that the quoted statement from the recovery plan states in full: "[m]uch of the Sierra Nevada range  is unsurveyed particularly on private lands and therefore the true status in this region is largely unknown." TMAR15849.  As to the second sentence, Defendants admit that in its 2002 recovery plan for the CRLF, the U.S. Fish and Wildlife Service ("FWS") deemed CRLF within the Sierra Nevada region to have a "low" recovery status, and aver that the recovery plan explains that this status meant that there were "[f]ew existing populations, high levels of threats, and, in general, medium habitat suitability."  TMAR15887.  Defendants deny the allegations contained in the third sentence and state that FWS specifically identified those threats facing the CRLF in the Sierra Nevada region, and did not list off road vehicle use among them. TMAR15844 (listing, inter alia, agriculture and non-native species, but not off road vehicle use, as threats to CRLF); see also id. at 15864 (stating only that "unmanaged" off road vehicle use can constitute a threat to CRLF, and listing only examples outside of the Sierra Nevada region). Defendants deny the allegations contained in the fourth sentence, and state that the full quote from the recovery plan states "[u]nmanaged off road vehicles can damage riparian vegetation, increase siltation in pools, compact soils, disturb the water in stream channels and crush frogs." TMAR15864 (emphasis added).  Defendants deny the allegations contained in the fifth sentence, and aver that the full quote from the recovery plan states that CRLF "were eliminated in part by off road vehicle activities at the Mojave River above Vidaville and at Rincon Station on the West Fork of the San Gabriel River" and that neither of the examples given lies within the Sierra Nevada region.  TMAR15864.

5. As to the allegations contained in the first clause of the first sentence,

Defendants admit that "there have been no forest-wide [CRLF] surveys" on the ENF but aver that the statement is misleading because such surveys would not be necessary. Defendants further aver that the ENF, with assistance from the U.S. Geological Survey, has conducted surveys in all streams that have potential CRLF habitat. TMAR15874. During these surveys, no CRLFs have been observed. Id. Defendants additionally aver that these surveys determined that the habitat suitability for CRLF within the ENF was considered of poor quality. Id. As to the allegations contained in the second clause of the first sentence, Defendants admit that since 1974 there have been 20 detections of CRLF within and adjacent to ENF lands, but further aver that (1) "[t]he only waterbody considered to sustain a population of [CRLF] [within or adjacent to the ENF] is North Fork Weber Creek", (2) "[t]he majority of detections along this creek occur in Spivey Pond," TMAR12895, and (3) the CRLF detections in this waterbody are not within the ENF. TMAR12895, Table 2. Defendants do not dispute the allegations contained in the second sentence. Defendants do not dispute the allegations contained in the third sentence, but additionally aver that: (1) in the CRLF recovery plan, FWS preliminarily identified a total of 35 core areas, distributed throughout portions of the species' historic and current range, and (2) FWS had not yet determined at the time it issued the plan whether any of those areas were occupied by CRLF, constituted suitable CRLF habitat, or that they represented viable areas for the focus of recovery efforts. TMAR15892. Defendants furthermore aver that (1) two of those core areas lie partially within the Forest; and (2) FWS in the recovery plan assumed that habitats within core areas would have to be assessed for suitability. Id. Defendants aver, moreover, that such assessments were deemed by FWS to be especially important in areas between the elevations of 3,500 and 5,000 feet; at these elevations, known localities are rare and suitable habitat appears to be less abundant. Id.

      6.      Defendants do not dispute the allegations contained in the sixth paragraph. TMAR03282, 01260.

      7.      Defendants do not dispute the allegations contained in the first, second, third, or fourth sentences of the seventh paragraph. Defendants dispute the characterization of

1  TMAR02703 contained in the fifth sentence, and aver that "unauthorized routes" are defined at
2  TMAR02703 to mean "[a] route that is not a forest road or trail or a temporary road or trail and
3  that is not included in a forest transportation atlas." TMAR02846. Defendants further state that
4  the statement of the administrative record cited by Plaintiffs provides more fully that:

> [T]here are 526 miles of low standard, unauthorized routes within the forest. Many of these routes predate the establishment of the Forest. They are not part of the forest transportation system. About 25 percent were built by timber purchasers, miners, and permittees prior to the 1960's and have since lost their usefulness in serving land management activities. Unauthorized routes also originated as temporary logging roads, skid trails, or fire lines. Many of these were never intended for use by vehicles but were never rehabilitated, and over time have been used by the public, even though they are not maintained. Over the past 30 years, Forest users have also created other unauthorized routes by driving cross country through the Forest.

TMAR02703.

      8.      Defendants dispute the allegations contained in the eighth paragraph because they do not reflect the actual mileage decided upon by the Defendants, or the no-action alternative considered by the Defendants. TMAR001490. Defendants further aver the following: (1) the Draft Environmental Impact Statement ("DEIS") proposed four action alternatives, not five, that would designate between 1,362 and 888 miles of routes for motorized use, including designating between 18 and 46 miles of previously unofficial, unauthorized routes for motorized use; (2) one of the alternatives that USFS considered was a no action alternative, which would have designated 2,212 miles of routes for motorized routes, including 526 miles of unauthorized routes and would have allowed for cross country travel; (3) in addition to the miles stated above, there are additional miles of paved and surfaced roads (which are maintained for passenger vehicles and are classified as maintenance level 3 or above) open to motor vehicle use which are already considered designated; and (4) USFS's "Preferred Alternative" was Alternative D, which would have resulted in the designation of 1,061 miles of routes for motorized use, including 34.8 miles of previously unauthorized routes, for a total of 1,727 miles of motorized routes across the Forest (including Maintenance Level 3 and above roads). TMAR01490, 01540, 01541, 01547; 01519-52.

Case No. 2:09-CV-02523-LKK-JFM
Center for Sierra Nevada Conservation, et al. v. USFS       Page 6

9.   Defendants do not dispute the allegations contained in the first sentence of the ninth paragraph. As to the allegations contained in the second sentence, Defendants deny the allegations and aver that Modified Alternative B was not a "new" alternative. TMAR02449. Rather, based on public comments to the DEIS, the ENF Modified Alternative B, included Modified Alternative B in the Final Environmental Impact Statement, and selected Modified Alternative B in the Record of Decision ("ROD"). TMAR02449, 02455-2458 (FEIS); TMAR03273-3278). Defendants admit that Modified Alternative B authorized 1,212 miles of routes for motorized use, including 23 miles of previously unauthorized routes. TMAR02457. As to the third sentence, Defendants dispute the allegations and further aver that the administrative record states that there were "0 CRLF detections within 200 feet of a motorized route," TMAR12777-78. Defendants additionally aver that Modified Alternative B allowed the lowest and second lowest number of road mileage running through meadows and Riparian Conservation Areas, respectively, out of all of the alternatives considered. TMAR02673-74 (charts).

10.   Defendants do not dispute the allegations contained in the tenth paragraph.

11.   Defendants do not dispute the allegations contained in the eleventh paragraph.

12.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the twelfth sentence, and therefore deny the same.

## III. STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

### A. The Eldorado National Forest

1.   The ENF is located in the central Sierra Nevada mountains. TMAR03651. Portions of Alpine, Amador, El Dorado, and Placer counties lie within the Forest boundary. Id. The Forest is bordered on the north by the Tahoe National Forest, on the east by the Lake Tahoe

1  Basin Management Unit, on the southeast by the Humboldt-Toiyabe National Forest, and to the
2  south by the Stanislaus National Forest. Id.

3    2.  The Forest ranges in elevation from 1,000 feet in the foothills to more than
4  10,000 feet above sea level along the Sierra crest. TMAR03651. The mountainous topography
5  is broken by the steep canyons of the Mokelumne, Cosumnes, American, and Rubicon rivers. Id.
6  Plateaus of generally moderate relief are located between these steep canyons. Id. The
7  principle vegetative types found on the Forest are woodland, chaparral, mixed conifer, true fir,
8  and subalpine. TMAR03652. A wide variety of hardwoods, brush, grasses, and forbs are mixed
9  in with each of these forest types. Id. A complicated ownership pattern exists. TMAR03651.
10 The lands with the Forest are comprised of National Forest System ("NFS") lands in one main
11 body, within which there are isolated parcels in private ownership, or are otherwise non-NFS
12 lands (collectively, "Other Ownership"), as well as a separate area where NFS lands exist in a
13 checkerboard pattern. TMAR03651, 03652. In this separate area, multiple small parcels of NFS
14 lands are intermixed with lands in Other Ownership. TMAR03651, 03652.

15 **B.** **Off-Highway Vehicle Management on the Eldorado National Forest**

16   3.  In 1989, the ENF completed its Land and Resource Management Plan
17 ("LRMP"), which directed the ENF to restrict off-highway vehicle ("OHV") use to designated
18 roads and trails in roaded natural and semi-primitive areas. TMAR02433. LRMP
19 implementation was to include the development of a new Forest OHV plan by January 1, 1990.
20 Id. After January 1, 1990, only those routes designated in USFS's new Forest OHV plan would
21 be open for OHV use. Id. The new OHV plan would also replace the 1977 Off-Road & Vehicle
22 Travel Plan. Id. The LRMP also allocated certain management areas for non-motorized use and
23 other management areas with other restrictions on motorized use. Id.

24   4.  In addition to the LRMP, USFS issued the Sierra Nevada Forest Plan
25 Amendment ("SNFPA") Final Supplement Environmental Impact Statement ROD in January
26 2004, which amended the Forest Plans for the 11 national forests in the Sierra Nevada range,
27 including the ENF. TMAR010938, 11010, 11508. The SNFPA also provided further standards
28

1  and guidelines and management intent for OHVs, primarily by prohibiting motor vehicle travel off of designated roads, trails, and limited OHV use areas.  Id.

3.  5.  In 1990, after conducting an inventory of the existing system of trails, roads, and tracks being used by OHVs, the ENF finalized the new OHV and Trail Management Plan ("1990 OHV Plan").  TMAR05574-5634.  The 1990 OHV Plan called for the closing of unlimited OHV areas, thus restricting OHV use to designated areas, and the existing system of roads and trails became the designated route system.  Id.  The 1990 OHV Plan included four zones that authorized or restricted various levels of motor vehicle use, ranging from zones where motor vehicle use was prohibited to zones where motor vehicle use was restricted to designated routes.  Id.  No areas were designated as open to cross-country motor vehicle travel.  Id.  Additional travel restrictions included seasonal closure when soil moisture conditions reached a point where continued wheeled vehicle use was causing excessive rutting.  Id.

6.  Several administrative appeals that dealt with OHV management were filed in response to the 1989 Forest Plan ROD.  TMAR02394-95, 5291-5396, 5580.  In 1995, upon review of the Region 5 Regional Forester's decision, the Forest Service Chief issued his appeal decision. TMAR02394-95.  The Forest Service Chief granted in part the OHV users' appeal, concluding that the 1990 OHV Plan had not adequately addressed the site specific impacts associated with restricting OHV use to designated routes.  Id.

7.  The Center for Sierra Nevada Conservation, the Center for Biological Diversity, and the California Wilderness Coalition filed a civil action, Center for Sierra Nevada Conservation v. Berry, No. 02-0325 (E.D. Cal.), contending, in part, that the ENF's lack of a forest-wide environmental review for the 1990 OHV Plan violated the National Environmental Policy Act ("NEPA").  TMAR002394-95.  This Court found that the ENF's 1990 OHV Plan violated NEPA because the ENF was required to either create a new Environmental Impact Statement or supplement the ENF's programmatic EIS before adopting the 1990 OHV Plan.  TMAR005625-26.  On August 16, 2005, this Court ordered the ENF to: (1) withdraw the 1990 OHV Plan; (2) issue a Final EIS and ROD for a new ENF OHV Plan by December 31, 2007 to

Case No. 2:09-CV-02523-LKK-JFM
Center for Sierra Nevada Conservation, et al. v. USFS                                                           Page 9

1  be consistent with regional guidelines for OHV route designation, with new national OHV

2  regulations, and with the requirements of NEPA and NFMA; and (3) restrict private-party use of

3  wheeled motor vehicles across the ENF (except in the Rock Creek Recreational Trails area) to

4  NFS roads open for public use, and NFS trails managed for OHV use and open for public use,

5  until new management direction was adopted.  TMAR002434, TMAR005635.  The completion

6  date for the Final EIS and ROD for a new OHV plan was later extended until April 2, 2008 to

7  allow additional time for public comment and response to public comment.  TMAR002434,

8  TMAR005646.

9       8.     As directed by the Court's August 16, 2005 order, on August 25,

10  2005, the ENF Forest Supervisor issued a forest order to restrict motor vehicle use on NFS roads

11  open for public use and NFS trails managed for OHV use and open for public use across the

12  ENF (except the Rock Creek Recreational Trails area).  TMAR002394-95, 005635-36.  The ENF

13  initiated the required environmental analysis during the summer of 2005.  Id.  The Notice of

14  Intent to Prepare an EIS was published in the Federal Register on October 26, 2005.  Id.

15  **C.**    **USFS Travel Management Regulations**

16       9.     Just as the ENF initiated the EIS to designate roads and trails for public

17  motor vehicle use, USFS finalized new national regulations on November 9, 2005 regarding

18  travel management on National Forests across the country.  TMAR02434-35.  The new

19  regulations were developed in recognition of the impacts from unauthorized motor vehicle use

20  on National Forests.  Id.  The issue of increasing OHV use on public lands, and their associated

21  resource impact concerns and public conflicts, has existed since the issuance of Executive Order

22  11644 in 1972.  Id.

23       10.     Accordingly, proposed regulations were published on July 15, 2004, and

24  the final rules were published on November 9, 2005.  TMAR05651.  The new travel

25  management rule revised regulations at Title 36 of the Code of Federal Regulations to require

26  designation of NFS roads, NFS trails, and areas for motor vehicle use on NFS lands on all

27  National Forests.  TMAR02435.  The final rule provided a consistent framework for local USFS

28

units to designate NFS roads, NFS trails, and areas on NFS lands open to motor vehicle use, by class of vehicle, and if appropriate, by time of year. Id. The rule also allowed the responsible official to include in the designation limited use of motor vehicles within a specified distance of certain designated routes, and if appropriate, within specified time periods, solely for the purposes of dispersed camping or retrieval of downed big game animals by an individual who has legally taken the animal. Id. Once designation is complete, the rule prohibits use of motor vehicles inconsistent with those designations upon completion and public release of a Motor Vehicle Use Map. Id. The final rule provided better opportunities for sustainable motorized recreation, better protection of the environment, increased public safety, and ample high-quality access to NFS lands. Id.

11. Within California, USFS also worked with the California Off-Highway Motor Vehicle Recreation Commission and the Division of Off-Highway Motor Vehicle Recreation of the Department of Parks and Recreation to develop a Memorandum of Intent ("MOI") to address off-highway vehicle management on public lands within California. TMAR01509; see also Exh. 1, available at TMAR16947. This MOI was signed on August 11, 2003. Id. The MOI identified the common goal of all parties to improve management of OHV used on NFS lands in California, as well as a process and consistent standards and criteria for doing so. Id. The MOI also led to the development of a USFS Region 5 OHV Route Designation Guidebook, which provided a general five-step framework and timeline for designating OHV routes on national forests in California. Id. The ENF travel management project followed these guidelines. Id.

**D.    The ENF Wheeled Motorized Transportation System**

12. Prior to implementing the Public Wheeled Motorized Travel Management FEIS and ROD at issue in this lawsuit, there were 2,342 miles of National Forest Transportation System ("NFTS") roads and NFTS trails on the ENF that allowed for public motorized use. TMAR02435. Motorized use was occurring, however, on an additional 526 miles of unauthorized routes. TMAR02435-36. These unauthorized routes had generally developed

1  without environmental analysis or public involvement, and did not have the same status as NFTS
2  roads and NFTS trails included in the NFTS.  TMAR02436.

3       13.       The ENF's 2008 Public Wheeled Motorized Travel Management ROD
4  allowed public highway legal and non-highway legal motor vehicle use on 1,002 miles of native
5  surfaced roads maintained for high clearance vehicles (referred to as Maintenance Level 2 or
6  ML-2).  TMAR03273.  This includes the addition of 17 miles of unauthorized roads to the NFS.
7  Id.  In addition, there are 635 miles of surfaced roads suitable for passenger cars that were not a
8  part of the Travel Management ROD decision.  Id.  Motorcycle, ATV, and high clearance
9  vehicle use is allowed on 210 miles of trails, which includes the addition of 6 miles of
10 unauthorized trails to the NFS.  Id.  The decision prohibits public wheeled motor vehicle
11 cross-country travel, and provides for a seasonal closure to highway legal and non-highway legal
12 vehicles on all NFS trails and native surfaced roads from January 1 through March 31, annually.
13 Id.

14      14.       The Public Wheeled Motorized Travel Management ROD designated
15 certain NFS maintenance level 2 roads ("ML-2" or those open for use by high clearance
16 vehicles), and system motorized trails open to specific types of public wheeled motor vehicle use
17 and for season of use.  TMAR03273.  ENF maintenance level 3, 4, and 5 system roads subject to
18 the Federal Highway Safety Act were already designated open to highway legal vehicles, and
19 were not part of the decision.  TMAR02434.  The Public Wheeled Motorized Travel
20 Management ROD identified 23 miles of unauthorized motor vehicle routes in the current route
21 inventory for designation as system roads or trails for specific types of public wheeled motor
22 vehicle use and for season of use.  TMAR03273.  Travel off of designated routes is prohibited.
23 Id.  Inventoried routes not selected for designation for public motor vehicle use are closed to
24 motor vehicles year round.  TMAR05679.  The decision authorized the designation of routes
25 only and did not authorize any ground disturbing activities, such as: (1) the construction of new
26 routes; (2) the deconstruction or decommissioning of inventoried routes; (3) the reconstruction of
27 roads or trails; (4) the construction of trailheads, staging areas, or parking areas; (5) the
28

installation of gates or barriers; (6) restoration/ rehabilitation projects; or (7) wheeled motor vehicle use of dispersed camping sites. TMAR10571. Thus, the scope of the ENF's Public Wheeled Motorized Travel Management Decision is limited to designating (1) those existing NFS roads and NFS trails, including existing unauthorized routes, that would be brought into the NFTS and open for public use, and (2) the conditions under which the public could use them. Id.

**E.     Eldorado National Forest Travel Management Decision**

15.         As mentioned above, in October 2005, the ENF published a Notice of Intent initiating a process for planning travel management within the ENF. TMAR10569. Among other things, the ENF proposed to regulate unauthorized public wheeled motor vehicle use by allowing use on designated routes and prohibiting cross country travel. TMAR02393. The designated system of routes would provide for diverse public wheeled motor vehicle opportunities, provide routes that enhance wheeled motor vehicle recreation, and provide access to dispersed recreation. Id. In prohibiting wheeled motor vehicle traffic use off of designated routes, the ENF sought to minimize damage to ENF resources–including minimizing harassment of wildlife–and limit conflict between wheeled motor vehicle use and other recreation opportunities. Id.

16.         The ENF conducted extensive public involvement throughout the environmental analysis process for the Public Wheeled Motorized Travel Management decision. TMAR002398-002399. During scoping, the ENF (1) published the Notice of Intent in the Federal Register; (2) included a description of the project in the ENF Schedule of Proposed Actions; (3) sent 300 letters to adjacent property owners, potentially affected businesses, federal, state, and local agencies, special interest groups, and other interested parties; and (4) conducted public meetings and public open houses, and field trips, allowing public to provide suggestions and express concerns regarding the alternatives under consideration. TMAR002398. Throughout the process, an interdisciplinary team held bi-weekly conference calls to update the public on project status and other information. Id. ENF also published the Notice of Availability of the DEIS in the Federal Register, and mailed over 510 copies of the DEIS to

individuals, organizations, tribes, and government agencies. TMAR002399. ENF held six meetings to allow the public to provide comments, attended by over 900 individuals. Id. The ENF website also maintained a page containing information about the DEIS, links to the DEIS, and instructions on how to comment on the DEIS. Id. ENF also extended the comment period for an additional 45 days at the public's request. Id. The ENF received and considered over 6,000 comments on the DEIS. Id.

17.     After allowing for notice and comment by the public, in March 2008, the ENF issued its Travel Management Record of Decision ("ROD") and accompanying Final Environmental Impact Statement ("FEIS"). TMAR02387, 03270. On April 2, 2008, the ENF filed a Notice of Final Completion with this Court, notifying it that the ENF had complied with this Court's orders in Center for Sierra Nevada Conservation v. Berry, No. 02-0325 (E.D. Cal.). TMAR005649.

18.     In the FEIS, the ENF considered a total of twenty alternatives, but eliminated fourteen alternatives from detailed study. TMAR002468-74. One alternative eliminated from further consideration included a proposal to not designate any unauthorized routes. TMAR002469. USFS found that this alternative failed to meet the purpose and need of the project. Id.

19.     Out of six alternatives that USFS considered in detail, Modified Alternative B designated the third lowest number of miles of roads and trails of the various alternatives considered by USFS. TMAR02477. There are 630 miles of existing roads that are not a part of the decision, which make up a large number of the total miles (1,847). Id. Alternative Modified B also had the lowest number of stream crossings other than Alternative E. TMAR12782. Modified Alternative B has the second lowest number of miles of designated routes within Riparian Conservation Areas; the FEIS states that this alternative (as well as Alternative E) would provide the "greatest reduction in risk of adverse aquatic habitat alteration." TMAR02674 (Table 3-J-4).

20.     The only waterbody considered to sustain a population of CRLF at the

time of the Travel Management Decision in California was North Fork Weber Creek. TMAR 2681, 12895. The majority of the detections along this creek occurred at Spivey pond. Id. Spivey Pond and the detections on the North Fork Weber Creek lie outside the ENF. TMAR12895 (Table 2). The only CRLF observations within the Forest occurred in 2001 on Ralston Ridge. TMAR 12894-95. There, in an isolated pond, one adult frog was observed on June 1 and 23, 2001. Id. Subsequent surveys of this pond and adjacent drainages have failed to detect any CRLF. Id. Modified Alternative B does not designate any routes that cross or are within habitat known to be occupied by CRLFs, or any designated Critical Habitat for the CRLF. TMAR12900-12902.

21.     In July 2004 FWS, BLM, the ENF, and other state and federal agencies signed and approved a management plan for the CRLF at Spivey Pond. TMAR2681, n.18. The Spivey Pond CRLF management area is 54 acres. Id.

22.     Routes designated open to the public in the Travel Management decision would not directly or indirectly affect any waterbodies known to be occupied by CRLFs. TMAR2683.

23.     Unlike all but one of the other proposed alternatives, Modified Alternative B did not designate any unauthorized routes that did not meet the ENF's Riparian Conservation Objectives. TMAR02674-75.

24.     Based on the length of motorized routes within perennial seasonal and meadow Riparian Conservation Areas at the forest-wide scale Alternatives Modified B and E provided the greatest reduction in risk of adverse aquatic habitat alteration. TMAR02674. The main reason for the reduction was because the ENF did not propose for designation unauthorized routes that were not consistent with USFS's Riparian Conservation Objectives for public motorized vehicle use as part of Alternatives Modified B and E. TMAR02674-75.

25.     At the drainage basin scale, all of the action alternatives, including Modified Alternative B, would have led to a reduction in the length of streams at a high risk of adverse effects to aquatic habitat. TMAR02671-72.

26. Unlike Alternative A, Modified Alternative B did not include any routes in the North Fork Weber Creek drainage, which is the only aquatic system occupied by CRLF within the analysis area. TMAR02682. Modified Alternative B therefore would not capture surface flow and then deliver sediment into a stream associated with CRLF. Id. Similarly, Modified Alternative B included no routes open for public wheeled motor vehicle use that would cross a stream known to be occupied by CRLFs. Id.

**F.   California Red-Legged Frog**

27. The CRLF was listed as a threatened species in 1996. Endangered and Threatened Wildlife and Plants; Determination of Threatened Status for the California Red-Legged Frog, 61 Fed. Reg. 25,813 (May 23, 1996).

28. The CRLF is endemic to California and Baja California, Mexico and its known elevational range extends from near sea level to elevations of about 1,500 meters (5,200 feet). TMAR15843. Nearly all sightings have occurred below 1,050 meters (3,500 feet). Id. Populations remain in approximately 256 streams or drainages in 28 counties. Id. Threats to the CRLF include a wide variety of human impacts to its habitat, including urban encroachment, construction of reservoirs, and water diversions, contaminants, agriculture, and livestock grazing. Id. The introduction of nonnative predators and competitors also continues to threaten the viability of many CRLF populations. Id.

29. All of the routes authorized as part of Modified Alternative B are well outside of designated CRLF Critical Habitat. 75 Fed. Reg. 12,816 (March 17, 2010) (final critical habitat rule).

**G.   Route Designation Project Design Criteria for Threatened and Endangered Species and Critical Habitat**

30. In October 2006, after considering technical assistance and recommendations from FWS, USFS Region 5 developed and finalized a set of Route Designation Project Design Criteria for Threatened and Endangered species and Critical habitat

to achieve "no effect" or "may affect not likely to adversely affect" determinations at a programmatic level ("Design Criteria").  TMAR00001-10.  If the action met the Design Criteria, FWS concurred with the USFS's determination that the action would have "no effect" on, or "may affect" but would be "not likely to adversely effect" the CRLF, and no further consultation would be required.  TMAR 00001, 00032 - 00033, 12890.

31. The six design criteria for the CRLF were:

(1) Routes or areas do not have the potential to capture surface run-off and then deliver sediment into a stream associated with CRLF.

(2) In suitable CRLF habitat, routes avoid Riparian Reserve and Riparian Conservation Areas except where necessary to cross streams.  Crossing approaches get the riders in and out of the stream channel and riparian area in the shortest distance possible while meeting the gradient and approach length standards.

(3) Routes or areas do not cross any stream or waterbody within 500 feet of known occupied sites of CRLF and route or area is not within a distance of 500 feet from wetlands i.e. springs wet meadows ponds marshes.

(4) In habitat occupied by CRLF routes or areas do not have the potential to capture or divert stream flow.  The approaches to stream crossings are downsloped toward the stream on both sides.

(5) If within CRLF habitat, areas are located outside of Riparian Reserve, Riparian Conservation Areas, meadows, and wetlands.

(6) No route or areas are within Critical Aquatic Refuges for CRLF.

TMAR00003-4, 0032-33.

32. In December 2006, FWS concurred that implementation of USFS's route designation activities using the above criteria would have no effect on or would not be likely to adversely affect the CRLF.  TMAR00032.  FWS confirmed that as long as the Design Criteria were met, no further ESA consultation on the CRLF would required.  Id.

Respectfully submitted this 14th day of December, 2010.

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

*/s/ Jason A. Hill*
_____
Jason A. Hill
Trial Attorney

JASON A. HILL (DC 477543)
JOHN P. TUSTIN (TX 24056458)
Trial Attorneys
Natural Resources Section
J. BRETT GROSKO (Maryland Bar)
Trial Attorney
Wildlife and Marine Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
Benjamin Franklin Station, P.O. Box 663
Washington, D.C.  20044-0663
Tel:    202-514-1024 (Hill)
        202-305-3022 (Tustin)
        202-305-0342 (Grosko)
Fax:    202-305-0506 (Hill and Tustin)
        202-305-0275 (Grosko)
Jason.Hill2@usdoj.gov
John.Tustin@usdoj.gov
Brett.Grosko@usdoj.gov

*Attorneys for Federal Defendants*

OF COUNSEL

Rose Miksovsky, Esq.
U.S. Department of Agriculture
Office of the General Counsel
33 New Montgomery St., 17th Floor
San Francisco, California  94105

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2010, I electronically filed the foregoing xxxxxxxx with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

David A. Bahr
davebahr@mindspring.com
Lisa T. Belenky
lbelenky@biologicaldiversity.org
Erik Schlenker-Goodrich
eriksg@westernlaw.org
*Attorneys for Plaintiffs*
Paul A. Turke
pat@msbtlaw.com

*Attorney for Defendant-Intervenors*

/s/ Jason A. Hill

---

Jason A. Hill

*Attorney for Federal Defendants*