PAUL A. TURCKE (admitted *pro hac vice*)
MOORE SMITH BUXTON & TURCKE,
CHARTERED
950 W. Bannock Street, Suite 520
Boise, Idaho 83702
Telephone: (208) 331-1800
Facsimile: (208) 331-1202
pat@msbtlaw.com

DENNIS PORTER (Cal. Bar #67176)
Attorney at Law
8120 36th Avenue
Sacramento, CA 95824-2304
Telephone: (916) 381-8300
Facsimile: (916) 381-8726
dlporter2@yahoo.com

Attorneys for Defendant-Intervenors

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR SIERRA NEVADA CONSERVATION, et al.<br><br>            Plaintiffs,<br>vs.<br><br>UNITED STATES FOREST SERVICE, et al.<br><br>            Defendants,<br>and<br><br>CALIFORNIA ASSOC. OF 4 WHEEL DRIVE CLUBS, et al.<br><br>            Defendant-Intervenors. | Case No. 2:09-CV-02523-LKK-JFM<br><br>**DEFENDANT-INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION**<br><br>Hon. Lawrence K. Karlton |

## I.   INTRODUCTION

This matter is before the Court on cross-motions for summary judgment. Intervenors California Association of 4 Wheel Drive Clubs, California Enduro Riders Association, American Motorcyclist Association District 36, and BlueRibbon Coalition (the "Recreation Groups") concur and join in Defendants' submissions and are mindful of the Court's guidance to present

information that expands upon or is distinct from Defendants' memorandum. *See* Order (Dkt. # 39 ¶ 2a). The current Travel Plan represents the culmination of decades of planning and litigation before this Court. Motorized access has undergone increased analysis and been increasingly restricted with each new step in that evolution. Eldorado travel management has reached the point where the Court should appropriately defer to the agency's reasoned exercise of discretion. The Court should deny Plaintiffs' motion, grant Defendants' and Intervenors' motions and dismiss this matter with prejudice.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Intervenors have submitted a statement of undisputed facts, in which they join in and incorporate by reference Defendants' statement and offer their additional perspective on the planning process here. While Plaintiffs' largely ignore it, the background to the challenged agency action is uniquely important here. This Court succinctly summarized the most recent part of this history in its recent order in the related case *Public Lands for the People v. U.S. Dep't of Agric.*, Case No. CV-09-1750 (E.D. Cal.). *See*, Order (Dkt. #57) filed Dec. 15, 2010 at 3-4. In short, the Decision on the 2008 Travel Plan was motivated in the larger context by Forest System wide renewed analysis as part of the national Travel Management Rule, and more directly by this Court's remand following resolution of *Center for Sierra Nevada Conservation v. Berry*, Case No. 02-375-LKK (E.D. Cal.). The Eldorado National Forest has historically received motorized use on a far greater network of roads and trails, and the 2008 Decision represents yet a further reduction in the routes available for motorized travel.

## III.   ARGUMENT

DEFENDANT INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION - Page 2

This is essentially the third round of Eldorado travel management litigation before this Court. With each step the Forest has performed more detailed analysis and imposed additional restrictions on vehicle use. The Court should now defer to the searching and reasoned analysis of the Forest Service.

**A.  The Decision is a Reasonable Exercise of Agency Discretion.**

The Forest Service performed a lengthy, robust, and expensive analysis. Perhaps its universal unpopularity exemplifies its legal sufficiency. The Court should not disrupt the agency's balance.

    1.  <u>Legal Background and Agency Duty to Balance.</u>

Plaintiffs predictably emphasize preservation of natural resources and "environmental" issues in mischaracterizing the agency's multiple-use mandate. *See*, *e.g.*, Plaintiffs' Brief (Doc. No. 21-1) at 2 (characterizing decision as "transform[ing] the Pryor Mountains into a playground for motorized vehicle use"). However, as noted above, the Travel Plan <u>reduces</u> the locations upon which motorized vehicles can travel. Plaintiffs therefore fail to explain how this reduction of motorized travel will cause their predicted impacts to resources beyond those occurring during the decades of greater motorized travel that preceded the 2008 Travel Plan. Additionally, the legal framework behind the Travel Plan requires the Forest to strike a balance between various uses of the public lands, not to emphasize preservation or nonmotorized recreation as Plaintiffs imply.

The Forest conducts its planning through procedures under the National Environmental Policy Act ("NEPA"), which "is our basic national charter for protection of the environment." 40 C.F.R. § 1500.1. Plaintiffs, like many, focus their discussion on protection of the natural and

DEFENDANT INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION - Page 3

physical environment, but NEPA embodies a Congressional desire "to foster and promote the general welfare, to create and maintain conditions under which man and nature can exist in productive harmony, and fulfill the social, economic, and other requirements of future generations of Americans." 42 U.S.C. § 4331(a). NEPA's operative EIS requirement is triggered by federal action which may "significantly affect[ ] the quality of the <u>human environment</u>…." *Id.* at § 4332(2)(C) (emphasis added). The "human environment" "shall be interpreted comprehensively to include the natural and physical environment and <u>the relationship of people with that environment</u>." 40 C.F.R. § 1508.14 (emphasis added). NEPA is a purely procedural statute designed to "insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken." 40 C.F.R. § 1500.1(b); *see also*, *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989).

These duties are further refined and embodied in the Final Rule giving rise to the Travel Plan. *See*, *generally*, Travel Management: Designated Routes and Areas for Motor Vehicle Use, 69 Fed.Reg. 42381 (July 15, 2004); 70 Fed.Reg. 68264 (November 9, 2005) (the "TMR"). The TMR begins from the premise, upon which hopefully all could agree, that "[m]otor vehicles are a legitimate and appropriate way for people to enjoy their National Forests- in the right places, and with proper management." 70 Fed.Reg. 68264. Thus, the "final rule does not encourage or discourage motor vehicle use, but rather requires designation of roads, trails, and areas for motor vehicle use. The Department believes that a well-designed system of routes and areas designated for motor vehicle use can reduce maintenance needs and environmental damage, while enhancing the recreational experience for all users, both motorized and nonmotorized." *Id.* at 68271.

DEFENDANT INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION - Page 4

The Forest Service faces a complex task in evaluating vehicle use and making designations, implicating interdisciplinary analysis of myriad natural resource and sociopolitical factors. The TMR distills this analysis to "general" and "specific" criteria, which theoretically create substantive sideboards on any designations. The "general criteria" which "shall be considered" in making designations are:

> effects on National Forest System natural and cultural resources, public safety, provision of recreational opportunities, access needs, conflicts among uses of National Forest System lands, the need for maintenance and administration of roads, trails and areas that would arise if the uses under consideration are designated; and the availability of resources for that maintenance and administration.

36 CFR § 212.55(a) (2007). The "specific criteria" carry forward the "minimization" duties of Executive Orders 11644 and 11989 (issued by Presidents Carter and Nixon, respectively) (*see*, 42 Fed.Reg. 26959), and direct:

> the responsible official shall consider effects on the following, with the objective of minimizing:
> (1) Damage to soil, watershed, vegetation, and other forest resources;
> (2) Harassment of wildlife and significant disruption of wildlife habitats;
> (3) Conflicts between motor vehicle use and existing or proposed recreational uses of [NFS] lands or neighboring Federal lands; and
> (4) Conflicts among different classes of motor vehicle uses.

36 CFR § 212.55(b) (2007). Section 212.55 further identifies some "additional criteria" relating to transportation issues such as sound, emission, speed, traffic and clarifies that valid existing rights and rights of use must be recognized in any designations and that vehicle use cannot be designated in wilderness areas.

The broader legal and regulatory context is important in evaluating the Travel Plan. The standard of review turns on whether the agency considered "relevant factors" or "important

DEFENDANT INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION - Page 5

aspect[s]" of the particular issue[s] before it. *See*, *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc). Those factors, in the context of the Travel Plan, include providing appropriate human access, recreation opportunity, and related socioeconomic analyses, not the single-minded preservation mandate that Plaintiffs might prefer. Prior to the Travel Plan, a far more extensive motorized route network was available to Intervenors and the public. The Travel Plan is not even a "split" between uses, for nonmotorized recreational uses can still occur throughout the entire Forest and now have exclusive use of a greater portion of the Forest versus shared access with motorized vehicles on a now-smaller portion. Plaintiffs focus on additional routes they want closed to motorized use but fail to acknowledge the Plan's significant closures and the agency's good faith effort at striking a balance conforming to the law.

    2.    <u>Breadth of Alternatives Considered by Agency.</u>

The agency considered a broad range of options in the public planning process, including options favored by Plaintiffs. Prior to the 2008 Decision, there were a total of 2,868 miles of routes receiving motorized use. Defs. Stmt. Of Facts (Dkt. #57-1) at ¶ 12 (identifying 2,342 miles of "system" routes plus 526 miles of "non-system" routes receiving use). The ultimate decision (Modified Alternative B) authorized motorized use on 1,002 miles of roads and 210 miles of trails. *Id.* at ¶ 13. This alternative fell within the range of six alternatives considered "in detail" and fourteen others that were "eliminated from detailed study." *Id.* at ¶ 18-19. Plaintiffs object to the failure to "consider in detail" their desire to designate zero miles "unauthorized" or "non-system" routes, but other approaches, including the Recreation Groups' proffered alternative, received similar treatment from the Forest. *See* TMAR002472. The

DEFENDANT INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION - Page 6

agency considered a balanced range of alternatives and rationally connected the options considered in detail to the project purpose and need.

The range of alternatives reflects the "heart" of the agency's human environmental analysis. 40 CFR § 1502.14. The "heart" of the analysis encompasses a reasonable range of options the law requires.

### 3.  The Travel Plan is a Reasoned Solution to a Solomonic Challenge.

At the most basic level, the Travel Plan's success (or at least its legal sufficiency) is reflected by its unanimous unpopularity with engaged special interests. Only Plaintiffs have chosen to elevate their dissatisfaction to the point of filing suit, but the Recreation Groups and others seeking greater access opportunities actively participated in the administrative process and challenged the final decision through the administrative appeal process. The Recreation Groups submitted comments throughout the planning process, including route-specific comments. TMAR000159-000164.  BlueRibbon filed an administrative appeal from the Travel Plan decision, which was denied.  TMAR000092; TMAR000478.  The Travel Plan is far from the outcome sought by motorized access interests.

In the end, it is perhaps this wide-ranging discomfort with the Travel Plan that reflects its balance. This is a classic case where the agency "can't please all of the people all of the time." *Hells Canyon Alliance v. U.S. Forest Service*, 227 F.3d 1170, 1172 (9th Cir. 2000). There exist ample bases upon which to reject Plaintiffs' legal claims. Further, a ruling in Plaintiffs' favor would create a perverse incentive and further complicate effective public lands management. In fact, Plaintiffs took full advantage of their opportunity to participate. The fact that their views were not favored may actually reflect the Decision's success, and certainly not its illegality.

DEFENDANT INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION - Page 7

Plaintiffs have passionate and legitimate views on their chosen recreational experience and management strategies, but that does not mean that the judiciary should become the means by which Plaintiffs impose their vision on the managing agency and all others who are willing to accept the agency's decision.

The Forest conducted an extensive analysis that included robust public input. The Court should respect the balance selected by the agency.

### B.     Plaintiffs' Individual Claims Must Fail.

Defendants have extensively addressed Plaintiffs' individual claims on the merits. Plaintiffs fail to surmount the difficult arbitrary and capricious standard of review.

#### 1.     The Court Should Not Adopt Plaintiffs' Subpart A Interpretation.

Plaintiffs attempt to unveil a new litigation trap through the Forest's alleged failure to comply with "subpart A" of the TMR. Plaintiffs contend that subpart A must precede subpart B analysis, and additionally argue that the Forest designated more than a "minimum" road system here. Plaintiffs' Brief (Dkt. #52-1) at 10-14. This Court should decline Plaintiffs' invitation to create new law.

The minimum road system language now relied upon by Plaintiffs has long existed and has never given rise to any claims like those attempted here. The essential provisions are located in 36 CFR § 212.5(b)(1). In particular, Plaintiffs point to the language requiring the responsible official to "identify the minimum road system needed for safe and efficient travel and administration, utilization and protection of National Forest System lands." 36 CFR § 212.5(b)(1)(2007). The regulation further addresses the process by which the minimum road system is to be determined, indicating it will be "science-based", at "the appropriate scale",

DEFENDANT INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION - Page 8

involve the public, be designed to meet "resource and other management objectives", "applicable statutory and regulatory requirements", "to reflect long-term funding expectations" and "to ensure that the identified minimum system minimizes adverse environmental impacts associated with road construction, reconstruction, decomissioning, and maintenance."  *Id.*  The Forest's litigation risk of compliance should be inversely proportional to the breadth of this language.

Several broad-level observations limit, if not condemn, Plaintiffs' invocation of subpart A.  The language at issue does not reflect a new mandate of the TMR.  Rather, virtually the identical language pre-dated the TMR, and to counsel's knowledge has never been presented to any reviewing court or even formed the basis for significant discussion in generations of travel planning decisions.  *Compare*, 36 CFR § 212.5(b)(1)(2005) with 36 CFR § 212.5(b)(1)(2006).  It seems unlikely that Plaintiffs should achieve a "gotcha" moment in this litigation through language which has gone virtually unnoticed for so long.

Defendants' response properly outlines the legal predicate and logical application of *Chevron*-type deference.   The subpart A regulations do not plainly prescribe the connection to the "subpart B" process that was added by the TMR.  It is the agency's duty to initially interpret the regulation.  Despite Plaintiffs' consternation, it is rational, if not persuasive, that the agency concludes a minimum road system determination must occur after the subpart B site-specific evaluation of individual routes.  Such an interpretation seems consistent with the seemingly-indisputable fact that the language in section 212.5 refers exclusively to <u>roads</u>.  *See*, 36 CFR 212.1 (defining "road" as "[a] motor vehicle route over 50 inches wide, unless identified and managed as a trail.").  The omission of trails in section 212.5 appears both intentional and meaningful, for other sections of subpart A refer to broader elements of the transportation

DEFENDANT INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION - Page 9

system. *See*, 36 CFR § 212.2(b) (addressing forest transportation atlas, which addresses "the existence and condition of roads, trails, and airfields…."). Plaintiffs seemingly envision a world in which the agency official must explicitly and preliminarily determine the minimum road system as a foundation for subpart B analysis. This approach is backwards- the agency cannot consider the subpart A criteria, including recreation objectives, prior to finalizing the more detailed analysis of trails via subpart B.

Plaintiffs' substantive challenge also fails. The language relied upon by Plaintiffs covers a vast spectrum of factors implicating a correspondingly vast expanse of agency discretion. In the end, a substantive minimum road system argument should be evaluated similarly to the related minimization of impacts argument, which this Court rejected in *Berry*, observing:

> While it is certainly true that Executive Order 11644 created a policy striking a balance in favor of resource protection, it also mandated that "[o]ff-road vehicle management plans shall…provide for diverse use and benefits of the National Forests…." 36 CFR § 295.2(b) (2005). Therefore, while minimizing environmental damage "is mandatory as to the object to be achieved,…it leaves [the Forest Service] a great deal of discretion to decide how to achieve it."

Order (Dkt. #139) at 57 (filed Feb. 17, 2005); *Center for Sierra Nevada Conservation v. Berry*, Case No. 02:CV-325-LKK-JFM (E.D. Cal.) (bracketing and ellipses in original, quoting *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004)).

    2.    <u>Plaintiffs' NEPA Challenges Must Fail</u>.

Plaintiffs fare no better in their NEPA arguments, which again offer conflicting views but fail to demonstrate a complete lack of a critical analytical step or arbitrary and capricious conclusions.

Plaintiffs are well aware that an allegedly-flawed range of alternatives is fertile ground for NEPA litigation. Here, the agency considered a wide range of options. Inconvenient to Plaintiffs' argument is the fact that most of the options considered, including the final selected Modified Alternative B, meaningfully <u>reduced</u> vehicle access to the Forest. Plaintiffs' alternatives argument focuses on the alleged defect in considering at least some "unauthorized routes" in all of the "action" alternatives. Plaintiffs' Brief (Dkt. #52-1) at 22-24. First, the TMR makes clear the agency's discretionary authority to consider such existing routes for designation:

> Some user-created routes are well-sited, provide excellent opportunities for outdoor recreation by motorized and nonmotorized users alike, involve less environmental impact than cross-country motor vehicle use, and would enhance the system of designated routes and areas. Other user-create routes are poorly located and cause unacceptable environmental impacts.

70 Fed.Reg. 68268 (Nov. 9, 2005). In short, the Travel Management Rule is based on an understanding that "system" route networks reflect unique planning history, or lack thereof. Rather than creating a categorical prohibition that Plaintiffs would certainly prefer, the agency determined in crafting the Rule:

> The Department believes that evaluation of user-created routes is best handled at the local level by officials with first-hand knowledge of the particular circumstances, uses, and environmental impacts involved, working closely with local governments, users, and other members of the public.

*Id.* The agency took precisely this approach in approving some unauthorized routes for continuing access. Perhaps even more notable is the practical context of Plaintiffs' argument. Prior to the Decision the agency has determined that 526 miles of unauthorized routes were receiving motorized use. Defs' Fact Stmt. (Dkt. #57-1) at ¶ 12. The Decision (adopting Modified Alternative B) designated 17 miles of unauthorized roads for use and 6 miles of

DEFENDANT INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION - Page 11

unauthorized trails. Simple arithmetic reveals that over 95 percent of unauthorized routes were effectively closed by the Decision. Plaintiffs doth protest too much over what was essentially a "yes" answer to their request to eliminate historical use of unauthorized routes.

Plaintiffs' cited caselaw does not apply here. The summary judgment order in the still-pending case *Center for Biological Diversity v. U.S. BLM*, Case No. 06:CV-4884-SI (N.D. Cal.) ("*CBD*") is readily distinguishable. Any violation there turned on the unique procedural context, which involved a Bureau of Land Management "decision tree" analytical process that defined whether a route would be proposed open or closed but offered no analysis of any factor other than those identified at each "branch" of the decision tree process. *See*, *CBD* at 24-25 (explaining that routes designated "open" via code SO-3 would have been evaluated for only the specified criteria, which omitted many of the "minimization" criteria). While BLM contended that an overall analysis was conducted that included the full minimization criteria the court disagreed, finding "nothing in the record documents that anything other than the Decision Tree questions and the route-type and recreation data collected during the on-the-ground surveys determined the designation of routes." *Id.* at 28. The "decision-tree"-dependent BLM analysis in *CBD* represents a unique method different from that employed by the Forest Service here. The DEIS and FEIS demonstrate that the Forest Service performed the over-arching consideration (lacking in *CBD*) of a full range of "human environmental" elements. The distinction is apparent in comparing the range of alternatives in *CBD*, which was found legally deficient because all seven (7) alternatives included the same 5,098-mile route network produced via the Decision Tree, as opposed to the variation in route mileages considered in the Forest's Travel Plan. *CBD* represents a unique outcome following a uniquely-flawed planning process.

DEFENDANT INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION - Page 12

Similarly, *Oregon Natural Desert Ass'n v. BLM*, 531 F.3d 1114 (9th Cir. 2008) effectively represents the converse situation from here, where BLM failed to consider routes that would close more than a trivial number of acres to vehicle use. That decision hardly aids Plaintiffs where the Eldorado Forest eliminated 95 percent of the vehicle use in question.

Plaintiffs' attack on the degree of site-specific analysis similarly fails. The Recreation Groups take little joy in this conclusion – there are many travel plans, including the Eldorado's, which frustrate the Recreation Groups through what appears a relatively broad-brush treatment of what enthusiasts would like to make a detailed debate. But such a requirement makes little sense in either a legal or practical context. A travel management decision must rationally consider thousands of miles of routes and hundreds of thousands (in some instances millions) of acres, and there comes a point at which a reviewing court must heed the guidance of *McNair* in concluding the agency has rationally discharged its responsibilities. Wherever a case may exist that reflects deficient agency analysis, it is not this one, where Plaintiffs are in the odd position of complaining about a decision that continues a long trend of reducing vehicle access to the Eldorado Forest.

3.  Plaintiffs' ESA Challenges are Jurisdictionally Deficient.

The Recreation Groups concur in Defendants' response to Plaintiffs' ESA claims, and wish to expand upon Defendants' observation that Plaintiffs have failed to properly exhaust administrative remedies on the specific claims they now assert. *See*, Defs' Brief (Dkt. #57-2) at 40 n.31. Even if the Court reaches the merits of Plaintiffs' claims, Defendants have amply responded. However, and particularly in light of the long history leading to the present suit,

Plaintiffs deserve little benefit of procedural doubt here and their claims should be rejected for failure to exhaust.

The Supreme Court has clarified that in suits under the APA "an appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993). Various statutes and regulations address Forest Service exhaustion requirements. *See, e.g.*, 7 U.S.C. § 6912(e); 36 C.F.R. § 215.21. Courts have interpreted these regulations to require exhaustion as a jurisdictional prerequisite to judicial review. *See*, *Glisson v. U.S. Forest Service*, 55 F.3d 1325 (7th Cir. 1995).

This case raises the related topic of issue-specific exhaustion, which appears a topic of developing interest in the Ninth Circuit. Apparently under the ambit of a prudential exhaustion interpretation, the Circuit seems to be applying increasing scrutiny in finding that issues not raised during the administrative process cannot be raised in a reviewing court. *See*, *Buckingham v. Sec'y, U.S. Dept. of Agric.*, 603 F.3d 1073 (9th Cir. 2010)). The *Buckingham* court indicates the absence of a "bright line test to determine whether a party has properly exhausted a claim to the Forest Service" and turns to other cases in explaining that one must "raise their problem 'with *sufficient clarity* to allow the decision maker to understand and rule on the issue raised.'" *Id.* (quoting *Idaho Sporting Congress v. Rittenhouse*, 305 F.3d 957, 965 (9th Cir. 2002) (italics in *Rittenhouse*)). The panel found similar guidance in the "so similar as to be on notice of and have opportunity to consider and decide" language of *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 899 (9th Cir. 2002).

DEFENDANT INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION - Page 14

As Defendants have noted, Plaintiffs seek to bootstrap a different ESA argument into their summary judgment pleadings than they raised below before the agency. There are sound legal and practical reasons to enforce the exhaustion requirement, to preserve and enhance not only the integrity of the administrative process but properly confine the burgeoning docket. This seems a uniquely appropriate case for the Court to observe the developing trend and reject Plaintiffs' modified ESA claims here.

## IV.   CONCLUSION

For the reasons discussed above, the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' and Intervenors' cross-motions for summary judgment.

Respectfully submitted this 21st day of December, 2010.

                        MOORE SMITH BUXTON & TURCKE, CHTD.

                          /s/     Paul A. Turcke
                        Paul A. Turcke

                        DENNIS L. PORTER, ATTORNEY AT LAW

                          /s/     Dennis L. Porter
                        Dennis L. Porter

                        Attorneys for Defendant-Intervenors